IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**DENISE MARIE B.,**[1]

    Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,**

    Defendant.

Civ. No. 3:19-cv-01620-CL

**OPINION AND ORDER**

---

MARK D. CLARKE, Magistrate Judge.

Plaintiff Denise Marie B. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for disability insurance benefits under Social Security Act. For the reasons provided below, the Commissioner's decision is AFFIRMED.[2]

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case.
[2] The parties have consented to Magistrate Judge jurisdiction over this action pursuant to 28 U.S.C. § 636(c)(1).

1 - Opinion and Order

## BACKGROUND

Plaintiff was born in 1956 and was 55 years old on the date of her alleged onset of disability. Tr. 138. She alleges that she became disabled on December 31, 2011, following a motor vehicle accident and due to trigeminal neuralgia, an ongoing pain condition that affects certain nerves in the face, complicated by multiple left temporal craniotomies. Tr. 15. Plaintiff also has a history of cervical strain and lateral epicondylitis, also known as "tennis elbow." Tr. 15. Plaintiff has a high school education and worked as a florist for many years. Tr. 50.

Plaintiff applied for disability benefits on July 18, 2016. Her application was denied initially and upon reconsideration. Tr. 138-39, 86, 93. Plaintiff requested a hearing and appeared before an Administrative Law Judge ("ALJ") on July 17, 2018. Tr. 29-58. The ALJ issued an unfavorable decision on September 11, 2018. Tr. 10-26. Plaintiff appealed the decision and was denied by the Appeals Council, making the ALJ's decision the final decision of the Commissioner. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving

significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

    a. The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled.

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the above analysis, the ALJ made the following findings:

1. Plaintiff last met the insured status requirements of the Act on December 31, 2016. Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of December 31, 2011 through her date last insured of December 31, 2016. Tr. 15.

2. Through the date last insured, Plaintiff had the following severe impairments: history of trigeminal neuralgia complicated by repeat left temporal craniotomy, history of a cervical strain and lateral epicondylitis on the right. Tr. 15.

3. Through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Tr. 16.

4. Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she was further limited to no more than occasional kneeling, balancing, or climbing of ramps and stairs. The claimant would need to avoid climbing ropes, ladders or scaffolds, and she would need to avoid all exposure to unprotected

heights, moving machinery and similar hazards. The claimant would need to avoid concentrated exposure to temperature extremes, and she should avoid environments where there is a high volume of noise produced by machines or people. Tr. 16.

5. Through the date last insured, Plaintiff was unable to perform past relevant work. Tr. 20.

6. Plaintiff was born on October 27, 1956, and was 60 years old, which is defined as an individual closely approaching retirement age, on the date last insured. Tr. 20.

7. Plaintiff has at least a high school education and is able to communicate in English. Tr. 20.

8. Plaintiff has acquired work skills from past relevant work. Tr. 20.

9. Considering Plaintiff's age education, work experience, and residual functional capacity, the claimant had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy. Tr. 20.

10. Plaintiff was not under a disability, as defined in the Social Security Act, at any time from December 31, 2011, the alleged onset date, through December 31, 2016, the date last insured.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations

of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Where the evidence before the ALJ is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse the Commissioner's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff presents the following issues for review:

1. Whether the ALJ erred by determining that Plaintiff had transferable skills from her past work as a florist.

2. Whether the ALJ erred by failing to state Plaintiff's limitation to noise exposure in specific work-related terms.

After careful review of the administrative record and the issues presented, this Court finds no reversable error in this case. Therefore, the decision of the Commissioner is affirmed.

## I. The ALJ did not err in finding that Plaintiff had transferable skills from her past work as a flower salesperson.

The Social Security Regulations (SSR) and Program Operations Manual System (POMS) instruct the ALJs on how to determine if a claimant has transferable skills from their past work. A work skill is defined as

> knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn). It is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner.

SSR 82-41, 1982 SSR LEXIS 34, *4. Skills are transferable "when the skilled or semi-skilled work activities [done] in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or other kinds of work." 20 C.F.R. § 404.1568(d)(1). Transferability "depends largely on the similarity of occupationally significant work activities among different jobs." *Id.* Transferability of skills is most probable when (1) the same or lesser degree of skill is required; (2) the same or similar tools and machines are used; and (3) the same or similar raw material, products, processes or services are involved." 20 C.F.R. § 404.1568(d)(2). However, complete similarity of these factors is "not necessary for transferability." 20 C.F.R. § 404.1568(d)(3).

Persons of advanced age (55 or older) cannot make an adjustment to other work that differs from their past relevant work unless there are transferable skills. 20 C.F.R. § 404.1568(d)(4). When a claimant is closely approaching retirement age and "has a severe

impairment that limits [a claimant] to no more than light work, we will find that [a claimant has] skills that are transferable to skilled or semiskilled light work only if the light work is so similar to [a claimant's] previous work that [a claimant] would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." 20 C.F.R. § 404.1568(d)(4).

In this case, Plaintiff was 55 years old on her alleged onset date and 60 years old on her date last insured. Tr. 20, 60. From 2004 until her accident in December 2011, Plaintiff worked as a sales associate at a flower shop, a semi-skilled position with a specific vocational preparation (SVP) level of four. Tr. 28; Dictionary of Occupational Titles (DOT) 260.357-026. The vocational expert testified that an individual with Plaintiff's age, education, and RFC could not perform her past work because it involved loud noise levels and constant exposure to wetness and humidity. Tr. 41. However, the vocational expert further testified that the skills associated with a sales associate at a flower shop were transferable with very little, if any, vocational adjustment to the jobs of a general sales clerk and a food sales clerk. Tr. 52-53. Both of these jobs are light, semi-skilled positions with an SVP level of three and a moderate noise level of three. DOT 290.477-014; DOT 290.477-018.

The ALJ asked the vocational expert to list what transferrable skills Plaintiff would have obtained from her past job as a flower salesperson. Tr. 53. The vocational responded that the skills associated with a flower person included, "the ability to work with people, to be able to listen carefully to the order, to be able to record that if there's any disputes as far as orders to resolve that, to be able to greet customers and discuss type of quality and quantity of the merchandise, to be able to compute charges for merchandise and services, provide information with regard to the different types of products." Tr. 53. In the ALJ's written decision, the ALJ

listed Plaintiff's transferrable skills as "working with people, greeting customers, recording orders, resolving disputes, discussing merchandise, computing charges, and providing information concerning different types of products." Tr. 20.

Plaintiff has not carried her burden to show a reversable error. Plaintiff claims that the ALJ erred in determining she possessed transferable skills and argues that many of the skill listed by the ALJ were aptitudes rather than skills. Plaintiff argues that any skills she acquired as a florist are specific to the floral industry. However, the Dictionary of Occupational Titles expressly provides that, in addition to duties directly related to flowers, a flower salesperson "performs other duties as described under SALESPERSON (retail trade; wholesale tr.)." DOT 260.357-026. Therefore, pursuant to the DOT, an individual's acquired skills as a flower salesperson should transfer directly to other, less skilled salesperson jobs. The ALJ explicitly asked the vocational expert to identify what transferrable skills Plaintiff would have obtained from working as a flower salesperson for approximately seven years, and the vocational expert did so. It was reasonable for the ALJ to rely on the vocational expert's testimony and the DOT to find that Plaintiff had transferrable skills.

II. **The Court finds no reversable error regarding the ALJ's findings related to Plaintiff's ability to tolerate noise.**

The residual functional capacity ("RFC") represents the most an individual can do despite her limitations and restrictions. SSR 96-8p. The RFC finding is a matter reserved for the ALJ's determination and is based on all the relevant medical evidence and other evidence in the case record. 20 C.F.R. § 404.1545(a)(3); *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."). The RFC must be stated in terms of specific work-related functions. SSR 96-8p.

9 - Opinion and Order

Here, the ALJ found that Plaintiff should avoid environments where there is a "high volume of noise produced by machines or people." Tr. 16. This finding was based on Dr. Cunningham's recommendation that Plaintiff should avoid working around "excessive noise." Tr. 612. The vocational expert interpreted the ALJ's limitation of no "high volume of noise produced by machines or people" to mean that Plaintiff could work in moderate noise level jobs. Plaintiff argues that the terms "excessive noise" and "high volume of noise" are too vague to be vocationally useful because they do not coincide with the terminology used in the DOT or the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("Selected Characteristics"). The Selected Characteristics categorizes noise as either very quiet (level 1), quiet (level 2), moderate (level 3), loud (level 4), or very loud (level 5). Selected Characteristics at ID-2. Plaintiff argues that even though the vocational expert interpreted the ALJ's restriction to mean that Plaintiff could work in moderate noise levels, it is not clear that this is what the ALJ or Dr. Cunningham meant.

After careful review of the record, the Court finds that substantial evidence supports the vocational expert's interpretation of the ALJ's noise limitation and the ALJ's step five findings. At the hearing, Plaintiff testified that she could not hear cars. Tr. 46. She further testified that she had problems with hearing only when she had a migraine. Tr. 46. She stated that she had problems with her left ear but no problem in the right ear. Tr. 46. February 2015 audiometry testing showed bilateral severe sensorineural hearing loss. Tr. 564. However, Plaintiff's speech discrimination score was 96 percent in her right ear and 100 percent in her left ear. Tr. 657. The State agency consultants assessed no limitations related to noise. Tr. 66, 82. Dr. Cunningham found that Plaintiff should avoid working around "excessive noise." Tr. 612. The ALJ adopted Dr. Cunningham's more restrictive noise-related assessment. Tr. 16.

At step five, the ALJ determined that Plaintiff could perform jobs requiring moderate levels of noise. Tr. 21, 51-53. According to the Selected Characteristics Appx. D, work environments with moderate noise levels include business offices where typewriters are used, grocery stores, and fast-food restaurants at off-hours. By contrast, examples of work environments with quiet noise levels include a library, a golf course, and an art museum. *Id.* Plaintiff has the burden to demonstrate harm in the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 410 (2009). Plaintiff has not identified any evidence indicating that she would not be able to tolerate moderate noise levels. Moreover, it was reasonable for the ALJ to interpret Dr. Cunningham's "excessive noise" limitation to mean that Plaintiff should avoid loud workplaces but can tolerate moderate levels of noise. Likewise, it was reasonable to the vocational expert to interpret the ALJ's limitation of "high volume of noise produced by machines or people" to mean that Plaintiff can tolerate moderate levels of noise.

**ORDER**

Based on the foregoing, the decision of the Commissioner is AFFIRMED.

It is so ORDERED and DATED this __3__ day of June, 2021.

MARK D. CLARKE
United States Magistrate Judge